T.C. Memo. 2015-145

UNITED STATES TAX COURT

HERMINE DINGER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19428-11.                    Filed August 6, 2015.

Hermine Dinger, pro se.

<u>Julia L. Wahl</u> and <u>Edward J. Laubach, Jr.</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  Respondent determined a $9,276 deficiency in petitioner's 2007 Federal income tax.  The issues for decision are:  (1) whether petitioner, a German citizen, who filed a 2007 joint Federal income tax return with

**[*2]** her husband, Carl, a U.S. citizen, is entitled to exclude $57,112[1] of section

911(a)(1)[2] foreign earned income she received in wages for that year as an

employee of the U.S. Army and (2) whether respondent is collaterally estopped

from litigating in this case the same issue pertaining to petitioner that was settled

pursuant to the agreement of the parties and reflected in a decision entered by this

Court on February 5, 2008, in Dinger v. Commissioner, T.C. Dkt. No. 4060-07,

stating that they owed no Federal income tax deficiencies or penalties for 2003

and 2004.

Background

This case was submitted fully stipulated pursuant to Rule 122. The

stipulated facts are so found, and we incorporate by reference the parties'

stipulation of facts and the accompanying exhibits. Petitioner resided in

Friedberg, Germany, at the time she filed the petition.

Petitioner, a German citizen, was married to Carl G. Dinger, a U.S. citizen,

for approximately 50 years. Mr. Dinger had served in the U.S. Army with two

---

[1]The parties agree that if the Court determines that the wages paid to petitioner are includible in her gross income for 2007, then they are properly treated as paid in U.S. dollars in the amount of $57,112.

[2]All section references are to the Internal Revenue Code as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.

[*3] combat tours of duty in Vietnam. They lived in Germany at all relevant times including 2007.

Friedberg, Germany, U.S. Army Dental Clinic

From 1970 through September 30, 2007, petitioner worked as a receptionist for the U.S. Army at the Friedberg, Germany, U.S. Army Dental Clinic. Petitioner entered into an employment contract with the U.S. Army in July 1970 and a termination agreement with the U.S. Army in April 2007.

2007 Federal Income Tax Return

Petitioner and Mr. Dinger filed a timely joint Form 1040, U.S. Individual Income Tax Return, for 2007 (2007 return) in which they made a section 6013(g)(1) election to treat petitioner as a U.S. resident. On the Form 2555-EZ, Foreign Earned Income Exclusion, attached to the return, they claimed the foreign earned income exclusion with respect to petitioner's compensation from the U.S. Army for that year. Petitioner reported her income and expenses for 2007 on the cash method of accounting.

Notice of Deficiency

On March 17, 2011, respondent issued a notice of deficiency to petitioner and Mr. Dinger for 2007 determining a $9,276 deficiency on the basis that

**[*4]** petitioner was not entitled to the foreign earned income exclusion for the income she earned in that year.

Petition and Motion To Dismiss as to Mr. Dinger

On August 22, 2011, petitioner and Mr. Dinger filed a joint petition with this Court. On November 24, 2011, Mr. Dinger died. On June 21, 2013, respondent filed a motion to dismiss this case with respect to Mr. Dinger for lack of prosecution. On July 23, 2014, the Court granted respondent's motion to dismiss as to Mr. Dinger.

Administration of Payroll

The Aufsichts und Dienstleistungsdirektion (ADD), translated as Pay Office Foreign Forces, "is a German authority of the Ministry of Internal Affairs and Sports" that administered the payroll relating to civilian employees of the U.S. Army under The Agreement Between the Parties to the North Atlantic Treaty Organization Regarding the Status of Their Forces (NATO SOFA), June 19, 1951, 4 U.S.T. 1792. The ADD disbursed wages to petitioner. The U.S. Army provided the funds ADD disbursed to petitioner in a salary statement that stated: "This is not an activity of the German civil service. Payment will be made by the home country and subject to recovery".

[*5] Petitioner's Prior Tax Court Case: T.C. Dkt. No. 4060-07

On October 16, 2006, respondent mailed to petitioner and her husband, Mr. Dinger, a notice of deficiency regarding their 2003 and 2004 tax years determining deficiencies in the respective amounts of $7,243 and $6,765 and section 6662(a) penalties in the respective amounts of $1,449 and $1,353. The adjustments to income included the disallowance of the foreign income exclusion of petitioner's U.S. Army wages for those years. Petitioner and Mr. Dinger timely filed a petition in this Court. Respondent filed a timely answer, generally denying each and every allegation set forth in the petition. Pursuant to the January 16, 2008, agreement of the parties, this Court entered a decision on February 5, 2008, stating that petitioner and Mr. Dinger owed no Federal income tax deficiencies or penalties for 2003 and 2004.

## Discussion

Issue 1. Petitioner's 2007 Foreign Earned Income

The first issue is whether petitioner is entitled to exclude $57,112 of section 911(a)(1) foreign earned income for 2007. Generally, taxpayers have the burden of proving that the Commissioner's determination is in error. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

**[*6]** Section 61(a) specifies that "[e]xcept as otherwise provided", gross income includes "all income from whatever source derived". The United States employs a worldwide tax system, taxing its citizens on their income regardless of its geographic source. See Crow v. Commissioner, 85 T.C. 376, 380 (1985). There are, of course, exceptions to the general rule, such as section 911. However, exemptions and exclusions from taxable income are construed narrowly, and the taxpayers must bring themselves within the clear scope of the exclusions. See, e.g., Commissioner v. Jacobson, 336 U.S. 28 (1949).

Section 911(a) permits a "qualified individual" to exclude from gross income "foreign earned income". Petitioner, a nonresident alien, made a section 6013(g)(1) election and therefore was treated as a U.S. resident because she was married to a U.S. citizen in 2007. Foreign earned income is "the amount received by such individual from sources within a foreign country * * * which constitute earned income attributable to services performed by such individual". Sec. 911(b)(1)(A). However, pursuant to section 911(b)(1)(B)(ii), the foreign earned income for an individual does not include amounts "paid by the United States or an agency thereof to an employee of the United States or an agency thereof". Petitioner was clearly a U.S. employee. Thus, we must address whether the U.S.

**[*7]** Army at the Friedberg, Germany, U.S. Army Dental Clinic is an agency of the United States for section 911(b)(1)(B)(ii) purposes.

In determining what constitutes an "agency", we focus on the degree of control the Government exercises over the entity involved. Courts examine several factors, such as: (1) power of the United States to initiate and terminate; (2) effectuation of Government purposes by the entity; (3) exclusion of private profit; and (4) limitation of employment to Government-connected persons. Payne v. United States, 980 F.2d 148 (2d Cir. 1992) (holding Panama Canal Commission qualifies as an agency of the United States for section 911 purposes and wages paid to its employees were not excludible as foreign earned income); Kalinski v. Commissioner, 64 T.C. 119, 127 (1975) (holding amounts taxpayers earned as employees of the U.S. Air Force Europe Child Guidance Center in Wiesbaden, Germany, were not excludible under section 911(a)(2) because the Center was an agency of the United States for section 911(a)(2) purposes), aff'd, 528 F.2d 969, 973 (1st Cir. 1976); Morse v. United States, 443 F.2d 1185, 1188 (Ct. Cl. 1971) (holding the U.S. employee association of Tehran, Iran, was an "agency" of the United States within the meaning of section 911, and the taxpayer was thus not entitled to exclude any salary payments from his gross income).

**[*8]** Pursuant to the established control test, the U.S. Army is an agency of the United States within the meaning of section 911(b)(1)(B)(ii). The parties have stipulated that petitioner was employed by the U.S. Army in 2007, performed services assigned by the U.S. Army as a receptionist at the Friedberg, Germany, U.S. Army Dental Clinic, and received compensation for those services in that year. Cf. Matthews v. Commissioner, 92 T.C. 351 (1989) (holding taxpayers employed by nonappropriated fund instrumentalities of the United States while living in Germany were employees of agencies of the United States; accordingly the income they received was not excludible foreign earned income), aff'd, 907 F.2d 1193 (D.C. Cir. 1990).

Petitioner alleges in the petition that the U.S. Army compensation was excludible from her income because ADD paid her and ADD "is a German government office." We disagree. As an employee of a U.S. agency, petitioner was paid by the United States or one of its agencies even though the ultimate source of such amounts is foreign. See, e.g., Erlandson v. Commissioner, 277 F.2d 70 (9th Cir. 1960), aff'g T.C. Memo. 1958-218; see also Smith v. Commissioner, 701 F.2d 807 (9th Cir. 1983), aff'g 77 T.C. 1181 (1981); Commissioner v. Mooneyhan, 404 F.2d 522, 527 (6th Cir. 1968), rev'g 47 T.C. 693 (1967). The record herein shows that although ADD administered and

[*9] distributed the U.S. Army payroll (pursuant to the NATO SOFA), petitioner was not employed by ADD. The NATO SOFA and Army regulations reflect that the U.S. Army provided the funds used to pay the wages of German locals such as petitioner.

In sum, petitioner was a U.S. Army employee, subject to hiring, firing, and supervision by that Government agency. Although ADD was the immediate source of the funds paid to petitioner, as an employee of the United States she was paid by "an agency" of the United States and therefore cannot avail herself of the foreign earned income exclusion. Accordingly, we hold that petitioner is not entitled to exclude from her 2007 income the wages she received as an employee of the U.S. Army in Germany.

Issue 2. Collateral Estoppel

The second issue is whether respondent is collaterally estopped from litigating in this case the same issue pertaining to petitioner that was settled pursuant to the agreement of the parties and reflected in a decision entered by this Court on February 5, 2008, in Dinger v. Commissioner, T.C. Dkt. No. 4060-07, stating that they owed no Federal income tax deficiencies or additions to tax for 2003 and 2004.

**[\*10]** Under the doctrine of collateral estoppel, "once an issue of fact or law is 'actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.'" Bussell v. Commissioner, 130 T.C. 222, 239 (2008) (quoting Montana v. United States, 440 U.S. 147, 153 (1979)). Collateral estoppel "is a judicially created equitable doctrine whose purposes are to protect parties from unnecessary and redundant litigation, to conserve judicial resources, and to foster certainty in and reliance on judicial action." Monahan v. Commissioner, 109 T.C. 235, 240 (1997) (citing Montana, 440 U.S. at 153-154, and United States v. ITT Rayonier, Inc., 627 F.2d 996, 1000 (9th Cir. 1980)).

For the Court to apply collateral estoppel, the following five conditions must exist:

> (1) The issue in the second suit must be identical in all respects with the issue decided in the first suit, (2) the issue in the first suit must have been the subject of a final judgment entered by a court of competent jurisdiction, (3) the person against whom collateral estoppel is asserted must have been a party or in privity with a party in the first suit, (4) the parties must actually have litigated the issue in the first suit and resolution of the issue must have been essential to the prior decision, and (5) the controlling facts and applicable legal principles must remain unchanged from those in the first suit. * * *

Bussell v. Commissioner, 130 T.C. at 239-240.

**[\*11]** Petitioner takes the position that "this issue previously went before the U.S. Tax Court * * * for our taxable years 2003 and 2004. Pursuant to an agreement with the IRS, the Court ordered and decided that there were no deficiencies." Essentially, petitioner is arguing that respondent is collaterally estopped from relitigating the foreign earned income issue. Petitioner has the burden of proving the elements of this affirmative defense. See Rules 39, 142(a).

Petitioner and Mr. Dinger reached a settlement pursuant to the agreement of the parties and reflected in a decision entered by this Court on February 5, 2008, in Dinger v. Commissioner, T.C. Dkt. No. 4060-07, stating that they owed no Federal income tax deficiencies or penalties for 2003 and 2004. Nonetheless, we agree with respondent that the decision document alone is insufficient for invoking collateral estoppel against respondent. The decision document in Dinger v. Commissioner, T.C. Dkt. No. 4060-07 only effected a settlement of that case. There was no stipulation of facts in support of the settlement. There was no trial or briefing on the merits of the foreign earned income issue, and there was no decision on the merits.

As stated above, where a question of fact essential to a judicial determination is actually litigated and decided in the first tax proceeding, the parties are bound by that judicial determination in a subsequent proceeding.

[*12] Commissioner v. Sunnen, 333 U.S. 591, 597-599 (1948). Here, however, the issue of whether petitioner's 2007 compensation is excludible under section 911(a) was not actually litigated in this Court in the prior case at Dinger v. Commissioner, T.C. Dkt. No. 4060-07. See, e.g., United States v. Int'l Bldg. Co., 345 U.S. 502, 505 (1953) (there was "a pro forma acceptance by the Tax Court of an agreement between the parties to settle their controversy for reasons undisclosed"). Therefore, we hold that collateral estoppel does not apply in this case.

In reaching our holdings, we have considered all arguments made by the parties, and to the extent not mentioned above, we conclude they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered

for respondent.